William M. Hogg (SBN 338196)
**Josephson Dunlap llp**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
whogg@mybackwages.com

*Counsel for Gonzalez & the Hourly Employees*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| **ARTURO GONZALEZ** Individually and for Others Similarly Situated,<br><br>　　　Plaintiff,<br><br>v.<br><br>**MANTECH ADVANCED SYSTEMS INTERNATIONAL, INC.** , a Virginia limited liability company,<br><br>　　　Defendant. | Case No. 2:25-CV-01035<br><br>**ORIGINAL CLASS & COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF:**<br><br>(1) Failure to Pay Overtime Under the Fair Labor Standards Act (29 U.S.C. § 201, *et seq.*);<br>(2) Failure to Pay for All Hours Worked (Cal. Lab. Code § 204);<br>(3) Failure to Pay Overtime (Cal. Lab. Code § 510);<br>(4) Failure to Authorize and Permit and/or Make Available Meal and Rest Periods (Cal. Lab. Code §§ 226.7 and 512);<br>(5) Failure to Provide Timely and Accurate Itemized Wage Statements (Cal. Lab. Code § 226); |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(6) Waiting Time Penalties
    (Cal. Lab. Code §§ 201-203);
(7) Failure to provide employee
    records (Cal. Lab. Code §§ 226
    and 1198.5); and
(8) Unlawful Business Practices (Bus.
    & Prof. Code §§ 17200 *et seq.*).

**DEMAND FOR JURY TRIAL**

## Summary

1.     Arturo Gonzalez ("Gonzalez") brings this class and collective action to recover unpaid wages and other damages from ManTech Advanced Systems International, Inc. ("ManTech").

2.     ManTech employed Gonzalez as one of its Hourly Employees (defined below).

3.     Gonzalez and the other Hourly Employees regularly work more than 8 hours a day and 40 hours a week.

4.     ManTech pays Gonzalez and the other Hourly Employees by the hour.

5.     But ManTech does not pay Gonzalez and the other Hourly Employees for all hours worked, including overtime and double time hours.

6.     Gonzalez and the other Hourly Employees regularly work more than 8 hours a day and more than 40 hours a workweek.

7.     Gonzalez and the other Hourly Employees also occasionally work double time hours.

8.     But ManTech does not pay them for all their hours worked, including overtime and double time hours.

9.     Instead, ManTech requires Gonzalez and the other Hourly Employees to work "off the clock" without compensation by prohibiting these employees from recording more than 8 hours a day and/or 40 hours a week (ManTech's "off the clock policy").

10.     As a result of ManTech's off the clock policy, it does not pay Gonzalez and the other Hourly Employees all straight time wages owed, nor does ManTech pay them all overtime and double time wages owed for the work they are required to perform "off-the-clock."

11.      But to satisfy ManTech's deadlines, productivity requirements, and quality standards, Gonzalez and the other Hourly Employees are nonetheless forced to perform regular work duties "off the clock" before and after their "on the clock"

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND
*Gonzalez v. ManTech Advanced Systems International, Inc.*

shifts, for ManTech's benefit and subject to ManTech's control.

12.    Further, ManTech frequently does not authorize, permit, and make available compliant meal and/or rest periods to Gonzalez and the other Hourly Employees, which they are entitled to under the California Labor Code and relevant Wage Orders.

13.    Thus, ManTech fails to authorize, permit, and/or make available required meal and/or rest periods to the Gonzalez and the other Hourly Employees.

14.    Further, ManTech fails to provide premium compensation to Gonzalez and the other Hourly Employees for missed and denied meal and/or rest periods.

15.    And ManTech's violative policies and practices result in non-compliant wage statements.

16.    Among other omissions and shortcomings, the wage statements ManTech provides to Gonzalez and the other Hourly Employees fail to accurately reflect their total hours worked, gross wages earned, net wages earned, and/or premium pay owed.

17.    Because of ManTech's failure to pay all wages (including straight time wages, overtime wages, double time wages, and premium pay) owed, Gonzalez and the other Hourly Employees do not receive all wages owed during employment.

18.    Therefore, Gonzalez and the other Hourly Employees who are ManTech's former employees do not receive all wages owed following upon from employment.

19.    Finally, Gonzalez submitted a formal written request to ManTech (by and through his retained counsel) requesting his payroll records pursuant to Labor Code § 226.

20.    Gonzalez's written request for copies/production of his payroll records was delivered to ManTech.

21.    More than 21 days passed, and ManTech failed to furnish Gonzalez with his requested payroll records.

22.    Gonzalez's written request also sought copies of his personnel file pursuant to Labor Code § 1198.5, and of any instruments relating to his obtaining or holding of employment (including any purported agreements to arbitrate) pursuant to Labor Code § 432.

23.    More than 30 days passed from the time ManTech received the request for such personnel records, and ManTech failed to furnish Gonzalez with the requested personnel records.

24.    Thus, ManTech has violated the Labor Code by failing to provide requested personnel records to Gonzalez.

## Jurisdiction & Venue

25.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

26.    This Court has supplemental jurisdiction over the state-law subclass claims because they arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

27.    This Court has personal jurisdiction over ManTech based on ManTech's substantial contacts with California, including being registered to do business in California and employing Gonzalez and other Hourly Employees in California.

28.    Venue is proper in this because a substantial part of the events or omissions giving rise to this claim occurred in Los Angeles County, which is in this District and Division. 28 U.S.C. § 1391(b)(2).

29.    Specifically, ManTech employed Gonzalez in and around Los Angeles County pursuant to its off the clock policy.

# PARTIES

30.    ManTech employed Gonzalez as a mobility field technician in California from approximately July 2022 until June 2024.

31.    ManTech classified Gonzalez as non-exempt and paid him by the hour.

32.    But ManTech did not pay him for all the hours he worked.

33.    Instead, under ManTech's off the clock policy, it required him to only record up to 8 hours a workday and 40 hours a workweek, regardless of the number of hours he actually worked in a day or week.

34.    Likewise, ManTech frequently did not authorize and permit Gonzalez to take *bona fide*, compliant meal and rest periods.

35.    And Gonzalez did not actually receive *bona fide*, compliant meal and rest periods.

36.    And ManTech did not pay Gonzalez the required premium pay for the first missed meal and rest period each workday.

37.    Gonzalez's written consent is attached as **Exhibit 1**.

38.    The other Hourly Employees are likewise subject to ManTech's off the clock policy and did not receive compliant meal and rest periods or the requisite premium pay.

39.    The putative collective of similarly situated employees is defined as:

> **All current and former hourly ManTech employees in at any time during the past 3 years through final resolution of this Action (the "FLSA Collective Members").**

40.    The putative class of similarly situated employees is defined as:

> **All current and former hourly ManTech employees in California at any time during the past 4 years through final resolution of this Action (the "California Class Members").**

41.    The FLSA Collective Members and the California Class Members are collectively referred to as the "Hourly Employees."

42.    ManTech is a Virginia corporation headquartered in Herndon, Virginia.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND
*Gonzalez v. ManTech Advanced Systems International, Inc.*

43.    ManTech may be served with process through its registered agent: **C T Corporation System, 330 N. Brand Blvd., Suite 700, Glendale, California 91203.**

### FLSA COVERAGE

44.    At all relevant times, ManTech was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

45.    At all relevant times, ManTech was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

46.    At all relevant times, ManTech was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as phones, computers, pens, and paper, etc.—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

47.    At all relevant times, ManTech has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

48.    At all relevant times, the Hourly Employees were ManTech's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

49.    At all relevant times, the Hourly Employees were engaged in commerce or in the production of goods for commerce.

### FACTS

50.    ManTech touts that federal agencies rely on its "technological expertise" and bills itself "as a trusted partner for U.S. Defense, Intelligence and Federal Civilian clients mak[ing] the world safer for U.S. citizens at home and abroad."[1]

51.    To meet its business objectives, ManTech employs workers such as

---

[1]    https://www.mantech.com/securing-the-future/ (last visited January 27, 2025).

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND
*Gonzalez v. ManTech Advanced Systems International, Inc.*

Gonzalez and the other Hourly Employees to provide services to its government clients.

52.    For example, Gonzalez worked for ManTech as a mobility field technician from approximately July 2022 until June 2024 in and around Los Angeles, California.

53.    Gonzalez's primary job duties included assisting ManTech's clients to update, maintain, and efficiently utilize secure phone systems, including through initially setting up phones for use, facilitating the transfer and migration of data, and troubleshooting problems as they arise for users.

54.    Gonzalez was ManTech's hourly employee.

55.    ManTech paid Gonzalez approximately $27.68 an hour.

56.    Throughout his employment, ManTech required Gonzalez to report his hours to ManTech for approval through its uniform timekeeping system, in accordance with its policies and procedures.

57.    Throughout his employment, Gonzalez regularly worked more than 9 hours a workday  for 5 to 7 days a workweek (45 to 63 hours a workweek).

58.    However, in accordance with ManTech's off the clock policy, it only permitted him to record up to 8 hours a workday and 40 hours a workweek.

59.    For example, during the two-week pay period ending April 30, 2024, Gonzalez could only record 8 hours of work for each weekday during the pay period:

| Earnings | | | | | |
|---|---|---|---|---|---|
| Description | Dates | Hours | Rate | Amount | YTD |
| HOLIDAY | | | 0 | | 648.00 |
| Regular | 04/16/2024 - 04/30/2024 | 88 | 27.675 | 2,435.40 | 19,990.80 |
| Vacation/PTO | | | 0 | | 432.00 |
| Earnings | | | | 2,435.40 | 21,070.80 |

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND
*Gonzalez v. ManTech Advanced Systems International, Inc.*

60.    And likewise during the pay period ending April 15, 2024:

| Earnings | | | | | |
|---|---|---|---|---|---|
| Description | Dates | Hours | Rate | Amount | YTD |
| HOLIDAY | | | 0 | | 648.00 |
| Regular | 04/01/2024 - 04/15/2024 | 88 | 27.675 | 2,435.40 | 17,555.40 |
| Vacation/PTO | | | 0 | | 432.00 |
| Earnings | | | | 2,435.40 | 18,635.40 |

61.    Thus, ManTech did not pay Gonzalez for all his hours worked, including failing to pay Gonzalez overtime and double time wages for overtime and double time hours worked.

62.    Further, throughout his employment, ManTech failed to authorize, permit, and make available to Gonzalez compliant meal and rest periods and failed to pay him the required premium pay for the first meal and rest period it denied or failed to make available each workday.

63.    And, throughout his employment, ManTech failed to provide Gonzalez with wage statements that accurately reflected all his hours worked and all net and gross wages he actually earned at the required rates.

64.    Finally, ManTech failed to provide Gonzalez's personnel file and payroll records in response to his formal written request for the same.

65.    On December 11, 2024, Gonzalez submitted a formal, written request to ManTech (by and through his counsel) to obtain a copy of his personnel file and payroll records.

66.    Gonzalez (by and through his counsel) mailed this request to ManTech's principal place of business through the United States Postal Service via its certified mail return receipt requested service.

67.    ManTech received Gonzalez's request on December 17, 2024, according to the Postal Service.

68.    However, ManTech never responded to Gonzalez's request.

69. And while exact job duties and precise locations worked may differ, Gonzalez and the other Hourly Employees are subject to ManTech's same or similar unlawful off the clock policy, while performing similar work.

70. Despite knowing the other Hourly Employees regularly work more than 8 hours a workday and 40 hours a workweek, ManTech does not pay them for all hours worked, including overtime and double time hours worked.

71. Instead, like Gonzalez, ManTech only permits the other Hourly Employees to record 8 hours a workday and 40 hours a workweek, regardless of how many hours they actually work.

72. And like Gonzalez, ManTech controls their "off the clock" work and this "off the clock" work is undertaken for ManTech's and its clients' benefit.

73. Gonzalez and the other Hourly Employees could not timely complete their job duties in accordance with ManTech's productivity and operational requirements unless they perform this "off the clock" work.

74. In other words, Gonzalez's and the other Hourly Employees' mandatory "off the clock" work is a fundamental requirement of their jobs as ManTech employees.

75. Indeed, ManTech could not eliminate this "off the clock" work altogether without impairing Gonzalez's and the other Hourly Employees' ability to complete their job duties, as assigned by ManTech.

76. And ManTech knows Gonzalez and the other Hourly Employees perform this compensable work "off the clock" because ManTech controls the work and requires them to do so.

77. And ManTech knows that it must pay Gonzalez and the other Hourly Employees for all hours it suffers or permits them to work.

78. But ManTech fails to exercise its duty as Gonzalez's and the other Hourly Employees' employer to ensure they are not performing work that ManTech does not want performed "off the clock."

79. Thus, ManTech requested, suffered, permitted, or allowed Gonzalez and the other Hourly Employees to work "off the clock."

80. And thus, ManTech denies Gonzalez and the other Hourly Employees wages for the time they spend performing compensable work "off the clock" in willful violation of California law.

81. Likewise, Gonzalez and the other Hourly Employees are denied overtime pay for compensable work performed "off the clock" during workdays in which they work over 8 hours and workweeks in which they work over 40 hours.

82. And Gonzalez and the other Hourly Employees are denied double time pay for the compensable work they perform "off the clock" during workdays in which they work over 12 hours and over 8 hours on the seventh consecutive day of work in a workweek.

83. Further, like Gonzalez, ManTech fails to provide the other Hourly Employees with *bona fide*, compliant meal and rest periods.

84. Instead, like Gonzalez, ManTech requires the Hourly Employees to work continuously throughout their shifts, and they are never fully relieved of all their duties for 30-minute meal periods, even when they work more than 5 hours a day.

85. And Gonzalez and the other Hourly Employees are not authorized and permitted to take a second duty free 30-minute meal period when they work more than 10 hours a day.

86. And they are not fully relieved of all their duties for 10-minute rest periods for every 4 hours they work or major fraction thereof.

87. Instead, ManTech requires Gonzalez and the other Hourly Employees to work continuously throughout their shifts.

88. Like Gonzalez, ManTech expects and requires the other Hourly Employees to be available to work during their entire shifts, even during any attempted meal or rest periods.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND
*Gonzalez v. ManTech Advanced Systems International, Inc.*

89.    But, like Gonzalez, ManTech also fails to pay the other Hourly Employees 1 hour of premium pay for each day it denies them a compliant meal period.

90.    And ManTech also fails to pay the Hourly Employees 1 hour of premium pay for each day it denies them a compliant rest period.

91.    Finally, like Gonzalez, ManTech fails to provide the other Hourly Employees with accurate itemized wage statements, as required by California law.

92.    The wage statements ManTech provides are not accurate because they do not reflect the true number of hours worked, the actual gross wages earned, overtime wages earned, double time wages earned, premium pay earned, and/or actual gross and net wages earned.

93.    Gonzalez and the other Hourly Employees are owed unpaid wages, including overtime (and double time) wages, as well as premium wages, when their employment terminates.

94.    These wages remain unpaid under ManTech's policies and practices, and thus, ManTech fails to pay all wages due to the Hourly Employees upon termination of employment.

95.    Thus, these wages remain due and owing to Gonzalez and other Hourly Employees who are former ManTech Employees.

96.    ManTech's violations of California law were willful, carried out in bad faith, and caused significant damage to Gonzalez and the other Hourly Employees.

## Class and Collective Action Allegations

97.    Gonzalez brings his California state law claims as a class action pursuant to Fed. R. Civ. P. 23, and brings his FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b).

98.    Like Gonzalez, the other Hourly Employees are victimized by ManTech's off the clock policy.

99.     Other Hourly Employees worked with Gonzalez and indicated they were paid in the same manner, performed similar work, and were subject to ManTech's same illegal off the clock policy.

100.     Based on his experience with ManTech, Gonzalez is aware ManTech's illegal off the clock policy was imposed on other Hourly Employees.

101.     The putative class of Hourly Employees is so numerous (in excess of 40 members) that joinder of all class members in one lawsuit is impracticable.

102.     The Hourly Employees are known to ManTech and can be readily identified through ManTech's business and personnel records.

103.     The Hourly Employees are similarly situated in the most relevant respects.

104.     Even if their precise job titles, exact duties, and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime and double time pay at the proper premium rates, compliant meal and rest periods and premium pay for missed meal and rest periods, accurate wage statements, and all wages earned upon termination of employment.

105.     The *relevant* inquiry is whether the Hourly Employees were required to work under and were paid according to ManTech's off the clock policy.

106.     Therefore, the specific job titles or precise job locations of the various Hourly Employees do not prevent class or collective treatment.

107.     Rather, the putative class of Hourly Employees is held together by ManTech's illegal off the clock policy, which systematically deprived Gonzalez and the other Hourly Employees of overtime and double time wages at the required premium rates, accurate wage statements, and all wages earned upon termination of employment.

108.     ManTech's records show the number of hours the Hourly Employees worked "on the clock" each workday and workweek.

109.     The back wages owed to Gonzalez and the other Hourly Employees can

therefore be calculated using the same formula applied to the same records.

110.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to ManTech's records, and there is no detraction from the common nucleus of liability facts.

111.    Therefore, the issue of damages does not preclude class or collective treatment.

112.    And Gonzalez's experiences are therefore typical of the experiences of the other Hourly Employees.

113.    Gonzalez has no interest contrary to, or in conflict with, the interests of other Hourly Employees that would prevent class or collective treatment.

114.    Like each Hourly Employee, Gonzalez has an interest in obtaining the unpaid wages owed to them under California law.

115.    Gonzalez and his counsel will fairly and adequately represent the Hourly Employees and their interests.

116.    Gonzalez retained counsel with significant experience in handling complex class and collective action litigation.

117.    A class and collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

118.    Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and ManTech will reap the unjust benefits of violating California law.

119.    Further, even if some of the Hourly Employees could afford individual litigation against ManTech, it would be unduly burdensome to the judicial system.

120.    Indeed, the multiplicity of actions would create hardship to the Hourly Employees, the Court, and ManTech.

121.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

122.    The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

123.    The common questions of law and fact include:

a.    Whether ManTech failed to pay the Hourly Employees wages for all hours worked, including those worked "off the clock";

b.    Whether ManTech failed to pay the Hourly Employees overtime at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 8 in a workday and 40 in a workweek;

c.    Whether ManTech failed to pay the Hourly Employees overtime at rates not less than 2 times their regular rates of pay for all hours worked in excess of 12 in a workday and 8 on the seventh consecutive day of work in a workweek;

d.    Whether ManTech failed authorize, permit, and make available 30-minute meal periods for every 5 hours worked and/or 10-minute rest periods for every four hours worked or major fraction thereof;

e.    Whether ManTech's decision not to pay the Hourly Employees wages, including overtime, double time, and premium wages for all hours worked was made in good faith; and

f.    Whether ManTech's violations were willful.

124.    As part of its regular business practices, ManTech intentionally, willfully, and repeatedly violated the Labor Code and applicable Wage Orders.

125.    ManTech's illegal policies deprived Gonzalez and the other Hourly Employees of the earned wages, including overtime, double time, and premium wages they are owed under the Labor Code and applicable Wage Orders.

## MANTECH'S VIOLATIONS WERE WILLFUL

126.    ManTech knew it was subject to the overtime provisions of the FLSA, California Labor Code, and applicable IWC Wage Orders.

127.    ManTech knew the California Labor Code and applicable IWC Wage Order(s) required it to pay non-exempt employees, including Gonzalez and the other Hourly Employees, earned wages for all hours worked.

128.    ManTech knew the FLSA, California Labor Code, and applicable IWC Wage Order(s) required it to pay non-exempt employees, including Gonzalez and the other Hourly Employees overtime wages at rates not less than 1.5 times their regular rates of pay, based on all remuneration, for all hours worked after 8 in a workday and 40 in a workweek.

129.    ManTech knew each Hourly Employees worked more than 8 hours in a workday or 40 hours in at least one workweek during the 3 years before this Complaint was filed because it required them to report their "on the clock" hours worked.

130.    ManTech knew Gonzalez and the other Hourly Employees worked more than 8 hours in at least one workday and/or more than 40 hours in at least one workweek during the 3 years before this Complaint was filed because it required them to report their "on the clock" hours worked.

131.    ManTech knew it was subject to the California Labor Code and applicable IWC Wage Order's double-time provisions.

132.    ManTech knew the California Labor Code and applicable IWC Wage Order(s) required it to pay non-exempt employees, including Gonzalez and the other Hourly Employees, double time wages at rates not less than 2 times his regular rates of pay, based on all remuneration, for all hours worked after 12 in a workday and 8 on his seventh consecutive workday.

133.    ManTech knew Gonzalez and the other Hourly Employees worked more than 12 hours in a least one workday and/or more than 8 hours on the seventh

consecutive workday at least once during the 3 years before this Complaint was filed because it required them to report their "on the clock" hours worked.

134.    ManTech knew Gonzalez and the other Hourly Employees are non-exempt employees entitled to overtime and double-time wages under the Labor Code.

135.    ManTech knew it paid the Hourly Employees on an hourly basis.

136.    ManTech knew the California Labor Code and applicable IWC Wage Orders required it to provide employees, including Gonzalez and the other Hourly Employees, with a 30-minute, duty free meal period for every five hours worked and a 10-minute, duty free rest period for every four hours worked or major fraction thereof.

137.    ManTech knew the California Labor Code and applicable IWC Wage Orders required it to pay employees, including Gonzalez and the other Hourly Employees, one hour of premium pay for each day they are denied a compliant meal period.

138.    And ManTech knew the California Labor Code and applicable IWC Wage Orders required it to pay employees, including Gonzalez and the other Hourly Employees, one hour of premium pay for each day they are denied a compliant rest period.

139.    ManTech knew Gonzalez and the other Hourly Employees did not receive compliant meal or rest periods.

140.    Nonetheless, ManTech did not pay Gonzalez and the other Hourly Employees one hour of premium pay each day it denied them a compliant meal period.

141.    And ManTech did not pay Gonzalez and the other Hourly Employees one hour of premium pay each day it denied them a compliant rest period.

142.    ManTech's failure to provide Gonzalez and the other Hourly Employees with compliant meal periods was neither reasonable nor was its decision

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND
*Gonzalez v. ManTech Advanced Systems International, Inc.*

not to pay these employees one hour of premium pay each day it denied them a compliant meal period made in good faith.

143.    Thus, ManTech knew, should have known, or recklessly disregarded whether it failed to pay Gonzalez and the other Hourly Employees for all the hours they performed compensable work.

144.    ManTech knew the California Labor Code and applicable IWC Wage Orders required it to provide Gonzalez and the other Hourly Employees with accurate itemized wage statements.

145.    Nonetheless, ManTech knew the wage statements it provided to Gonzalez and the other Hourly Employees did not accurately reflect their actual hours worked, their actual wages earned, their actual overtime wages earned, their actual double time wages earned, their actual gross and net wages earned, and/or their premium pay for missed meal and rest periods.

146.    ManTech's failure to provide Gonzalez and the other Hourly Employees with accurate wage statements was neither reasonable nor was its decision not to provide these employees with accurate wage statements made in good faith.

147.    ManTech knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated the Labor Code and applicable IWC Wage Order(s).

148.    ManTech knowingly, willfully, and/or in reckless disregard carried out its illegal policies that systematically deprived Gonzalez and the other Hourly Employees of their earned overtime wages in violation of California law.

149.    ManTech knowingly, willfully, and/or in reckless disregard carried out its illegal policies that systematically deprived Gonzalez and the other Hourly Employees of their earned wages, overtime wages, double time wages, rest and meal periods, premium pay for missed rest and meal periods, and accurate wage statements in violation of the California Labor Code and applicable IWC Wage

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND
*Gonzalez v. ManTech Advanced Systems International, Inc.*

1    Order(s).

2    150.    Indeed, ManTech and/or related entities have been previously sued for

3    the same or similar off the clock policy it imposed on Gonzalez and the other Hourly

4    Employees. *See e.g.*, *Hayes, et al. v. Man Tech International Corporation*, 1:14-cv-

5    00546 (E.D. Va.); *DeMatteo v. Mantech International Corporation*, 1:24-cv-012776

6    (E.D. Va.).

7    151.    In sum, ManTech's violations were willful, carried out in bad faith, and

8    caused significant damage to Gonzalez and the other Hourly Employees.

9    ## Count I

10    ## Failure to Pay Overtime Wages Under

11    ## Pursuant to 29 U.S.C § 216

12    152.    Gonzalez brings his FLSA claims on behalf of himself and the other

13    FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

14    153.    ManTech violated, and is violating, the FLSA by employing non-

15    exempt employees (Gonzalez and the other FLSA Collective Members) in a

16    covered enterprise for workweeks in excess of 40 hours without paying such

17    employees overtime wages at rates not less than 1.5 times their regular rates of pay

18    for all hours worked in excess of 40 each workweek, including hours worked "off

19    the clock."

20    154.    ManTech's unlawful conduct harmed Gonzalez and the other FLSA

21    Collective Members by depriving them of the overtime compensation they are

22    owed.

23    155.    Accordingly, ManTech owes Gonzalez and the other FLSA Collective

24    Members the difference between the overtime wages actually paid and the proper

25    overtime wages actually earned.

26    156.    Because ManTech's FLSA violations were willful, ManTech owes

27    these wages for at least the past 3 years.

28

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND
*Gonzalez v. ManTech Advanced Systems International, Inc.*

157.   Because ManTech's FLSA violations were not committed in good faith, ManTech is also liable to Gonzalez and the other FLSA Collective Members for an additional amount equal to all unpaid wages as liquidated damages.

158.   Finally, Gonzalez and the other FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## Count II

### Failure to Pay for All Hours Worked
### Pursuant to Cal. Lab. Code § 204

159.   Gonzalez brings his earned wages claim under the California Labor Code and IWC Wage Order(s) as a class action on behalf of himself and the other California Class Members pursuant to Fed. R. Civ. P. 23.

160.   At all relevant times, ManTech was subject to the Labor Code and applicable Wage Order(s) because ManTech was (and is) an "employer" within the meaning of the Labor Code and applicable Wage Order(s).

161.   At all relevant times, ManTech employed Gonzalez and the other California Class Members as its covered "employees" within the meaning prescribed in the Labor Code.

162.   Labor Code § 204 provides in relevant part that "all wages … earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular payday."

163.   Labor Code § 1194(a) provides as follows:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

164.   Labor Code § 200(a) defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by

the standard of time, task, piece, commission basis, or other method of calculation."

165.   Labor Code § 1198 makes it unlawful for employers to employ employees under conditions that violate the Wage Orders.

166.   IWC Wage Order 4-2001(2)(K) defines hours worked as "the time during which an employee is subject to the control of an employer and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

167.   ManTech willfully engaged in and continues to engage in a policy and practice of not compensating Gonzalez and the California Class Members for all hours worked or spent in ManTech's control.

168.   ManTech requires Gonzalez and the California Class Members to perform compensable work "off the clock."

169.   In other words, Gonzalez and the California Class Members are forced to perform work for ManTech's benefit without compensation and "off the clock."

170.   ManTech knowingly and willfully refuses to perform its obligations to provide Gonzalez and the California Class Members with compensation for all hours worked.

171.   ManTech's unlawful conduct harmed Gonzalez and the California Class Members by depriving them of their wages for all hours worked, which they are owed under California law.

172.   Despite having knowledge or the ready ability to gather knowledge of the precise number of hours worked using basic diligence, ManTech regularly fails to compensate Gonzalez and the California Class Members for all hours worked.

173.   As such, ManTech committed, and continues to commit, the acts alleged herein knowingly and willfully, and in conscious disregard of Gonzalez's and the California Class Members' rights.

174.   Accordingly, Gonzalez and the California Class Members are thus

entitled to recover nominal, actual, liquidated, and compensatory damages, plus interest, attorneys' fees, expenses, and costs of suit.

## COUNT III

### FAILURE TO PAY OVERTIME & DOUBLE TIME
### PURSUANT TO CAL. LAB. CODE § 510

175. Gonzalez brings his overtime and double time claims under the California Labor Code and IWC Wage Order(s) as a class action on behalf of himself and the other California Class Members pursuant to Fed. R. Civ. P. 23.

176. At all relevant times, ManTech was subject to the Labor Code and applicable Wage Order(s) because ManTech was (and is) an "employer" within the meaning of the Labor Code and applicable Wage Order(s).

177. At all relevant times, ManTech employed Gonzalez and the California Class Members as its covered "employees" within the meaning prescribed in the Labor Code.

178. Gonzalez and the California Class Members are entitled to overtime and double-time pay, based on all remuneration, under the Labor Code and applicable Wage Orders.

179. Labor Code § 510(a) provides:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.

180. IWC Wage Order 17-2001(4) states that employees:

> . . . shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1½) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days

in any workweek is permissible provided the employee is compensated for such overtime at not less than … [o]ne and one-half (1½) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek….

181.    Labor Code § 1194(a) provides:

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

182.    Labor Code § 1198 makes it unlawful for employers, like ManTech, to employ employees, including Gonzalez and the California Class Members, under conditions that violate the IWC Wage Order(s).

183.    Despite regularly working over 8 hours a workday and 40 hours a workweek as part of their normal and regular schedules, ManTech did not pay Gonzalez and the California Class Members overtime wages for all overtime hours worked, including those worked "off the clock."

184.    Despite occasionally working over 12 hours a day with ManTech's knowledge of such work, ManTech did not pay Gonzalez and the California Class Members double-time wages for all double-time hours worked, including those worked "off the clock."

185.    ManTech's unlawful conduct harmed Gonzalez and the California Class Members by depriving them of the overtime and double time wages they are owed under California law.

186.    Accordingly, ManTech owes Gonzalez and the California Class Members the unpaid balance of the full amount of overtime and double time wages owed and interest at the highest applicable rates.

187.    Finally, ManTech is also liable to Gonzalez and the California Class Members for their reasonable attorneys' fees and costs incurred in this action.

1

### Count IV

2

### Failure to Authorize, Permit, and/or Make Available Rest

3

### Periods Pursuant to Cal. Lab. Code §§ 226.7 and 512

4   188.   Gonzalez brings his meal and rest period claims under the California

5   Labor Code and IWC Wage Order(s) as a class action on behalf of himself and the

6   other California Class Members pursuant to Fed. R. Civ. P. 23.

7   189.   At all relevant times, ManTech was subject to the Labor Code and

8   applicable Wage Orders.

9   190.   At all relevant times, ManTech was Gonzalez's and the California Class

10   Members' "employer" within the meaning prescribed in the Labor Code.

11   191.   At all relevant times, Gonzalez and each Hourly Employee was

12   ManTech's "employee" within the meaning prescribed in the Labor Code.

13   192.   At all relevant times, Gonzalez and the California Class Members were

14   entitled to compliant, *bona fide* meal and rest periods under the California Labor

15   Code and applicable IWC Wage Order(s).

16   193.   Sections 226.7 and 512 of the California Labor Code and applicable

17   IWC Wage Order(s) require employers, like ManTech, to authorize and permit meal

18   and rest periods to their employees, including Gonzalez and the California Class

19   Members.

20   194.   Specifically, Sections 226.7 and 512 of the California Labor Code and

21   applicable IWC Wage Order(s) require employers, like ManTech, to provide

22   employees, including Gonzalez and the California Class Members, one

23   uninterrupted 30-minute meal period when they work more than 5 hours per day

24   and a second uninterrupted 30-minute meal period when they work more than 10

25   hours in day.

26   195.   Similarly, Section 226.7 of the California Labor Code and the applicable

27   Wage Orders require employers, like ManTech, to authorize and permit employees,

28   including Gonzalez and the California Class Members, to take 10 minutes of rest

time per 4 hours (or major fraction thereof) of work, and to pay employees their full wages during those rest periods.

196. Unless employees are relieved of all duties during their 30-minute meal period(s) and 10-minute rest period(s), the employees are considered "on duty," and the meal/rest period must be counted as time worked under the applicable IWC Wage Order(s).

197. Pursuant to Section 226.7(b) of the California Labor Code and applicable IWC Wage Order(s), employers, like ManTech, who fail to provide an employee with a required meal and/or rest period must, as compensation, pay the employee one hour of pay at the employee's regular rate for each day that the meal and/or rest period was not authorized or permitted.

198. At all relevant times, ManTech routinely failed to make meal periods available to Gonzalez and the California Class Members.

199. Despite long days regularly lasting in excess of 8, and occasionally 12 hours, Gonzalez and the California Class Members are regularly unable to take a meal period, prevented from timely taking a meal period, are otherwise subject to interruption during their meal periods, and are frequently interrupted during their attempted meal periods.

200. Gonzalez and the California Class Members are not paid one hour of premium pay for their missed meal periods as required by California law.

201. Similar to meal periods, at all relevant times, ManTech regularly fails to make rest periods available to Gonzalez and the California Class Members.

202. When available, if ever, Gonzalez's and the California Class Members' rest periods were often not compliant, but rather, were generally untimely and/or short.

203. Gonzalez and the California Class Members do not receive premium pay for their missed rest periods as required by California law.

204.  ManTech's unlawful conduct harmed Gonzalez and the California Class Members by depriving them of compliant meal and rest periods, as well as premium pay.

205.  ManTech knowingly, willfully, or in reckless disregard carried out this pattern or practice of failing to provide Gonzalez and the California Class Members compliant meal and rest periods and required premium pay for missed meal and rest periods.

206.  Accordingly, Gonzalez and the California Class Members are entitled to compensation for ManTech's failure to authorize, permit, and/or make available meal and rest periods, plus interest, attorneys' fees, expenses and costs of suit.

**COUNT V**

**FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS**

**PURSUANT TO CAL. LAB. CODE § 226**

207.  Gonzalez brings his wage statement claim under the California Labor Code and IWC Wage Order(s) as a class action on behalf of himself and the other California Class Members pursuant to Fed. R. Civ. P. 23.

208.  At all relevant times, ManTech was subject to the Labor Code and applicable Wage Order(s) because ManTech was (and is) an "employer" within the meaning of the Labor Code and applicable Wage Order(s).

209.  At all relevant times, ManTech employed Gonzalez and the California Class Members as its covered "employees" within the meaning prescribed in the Labor Code.

210.  Labor Code § 226(a) provides:

> An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing: (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the

employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee …. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.

211.   The applicable Wage Order(s) establish similar wage statement requirements.

212.   Labor Code § 226(e) provides:

An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorneys' fees.

213.   As a result of its aforementioned illegal practices, ManTech does not provide timely, accurate itemized wage statements to Gonzalez and the California Class Members, in violation of Labor Code § 226(a) and the applicable Wage Order(s).

214.   Specifically, the wage statements ManTech provides Gonzalez and the California Class Members do not accurately reflect their actual hours worked, their actual gross wages earned, their actual overtime wages earned, their actual double time wages earned, their premium pay earned, or their actual gross or net wages

earned.

215.   ManTech's unlawful conduct harmed Gonzalez and the California Class Members by depriving them of the accurate wage statements they are entitled to under California law.

216.   Accordingly, ManTech is liable to Gonzalez and the California Class Members for the amounts described above, plus interest.

217.   Finally, ManTech is also liable to Gonzalez and the California Class Members for their reasonable attorneys' fees and costs incurred in this action pursuant to Labor Code § 226(e).

## COUNT VI

### WAITING TIME PENALTIES

### PURSUANT TO CAL. LAB. CODE §§ 201-203

218.   Gonzalez brings his waiting time penalties claim under the California Labor Code and IWC Wage Order(s) as a class action on behalf of himself and the other California Class Members pursuant to Fed. R. Civ. P. 23.

219.   At all relevant times, ManTech was subject to the Labor Code and applicable Wage Order(s) because ManTech was (and is) an "employer" within the meaning of the Labor Code and applicable Wage Order(s).

220.   At all relevant times, ManTech employed Gonzalez and the California Class Members as its covered "employees" within the meaning prescribed in the Labor Code.

221.   Labor Code § 201 provides: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

222.   Labor Code § 202 provides: "If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND
*Gonzalez v. ManTech Advanced Systems International, Inc.*

employee is entitled to his or her wages at the time of quitting."

223. Labor Code § 203 provides, in relevant part:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

224. Gonzalez and some of the other California Class Members have left their employment with ManTech, at which time ManTech owed them unpaid wages.

225. These earned, but unpaid, wages derive from the unpaid earned wages, overtime pay, double time pay, and premium pay ManTech owes Gonzalez and the California Class Members.

226. ManTech willfully refused and continues to refuse to pay Gonzalez and the California Class Members all wages due and owing to them, in the form of earned wages, overtime pay, double time pay, and premium pay, upon the end of their employment as a result of ManTech's illegal policies.

227. ManTech's unlawful conduct harmed Gonzalez and the California Class Members by depriving them of the earnings and interest they are owed under California law.

228. Accordingly, ManTech is liable to Gonzalez and the California Class Members for all penalties owing pursuant to Labor Code §§ 201-203.

229. Labor Code § 203 provides that an employee's wages will continue as a penalty up to 30 days from the time the wages were due.

230. Therefore, Gonzalez and other California Class Members are entitled to penalties pursuant to Labor Code § 203, plus interest.

## COUNT VII

### FAILURE TO FURNISH EMPLOYEE RECORDS

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND
*Gonzalez v. ManTech Advanced Systems International, Inc.*

**PURSUANT TO CAL. LAB. CODE §§ 226 & 1198.5**

231.   Gonzalez brings his claim for failure to furnish payroll records and personnel file under the California Labor Code and IWC Wage Order(s) as a class action on behalf of himself and the other California Class Members pursuant to Fed. R. Civ. P. 23.

232.   At all relevant times, ManTech was subject to the Labor Code and applicable Wage Order(s) because ManTech was (and is) an "employer" within the meaning of the Labor Code and applicable Wage Order(s).

233.   At all relevant times, ManTech employed Gonzalez and the California Class Members as its covered "employees" within the meaning prescribed in the Labor Code.

234.   Labor Code § 226(c) provides:

> An employer who receives a written or oral request to inspect or receive a copy of records pursuant to subdivision (b) pertaining to a current or former employee shall comply with the request as soon as practicable, but no later than 21 calendar days from the date of the request. A violation of this subdivision is an infraction.

235.   Labor Code § 226(f) provides: "A failure by an employer to permit a current or former employee to inspect or receive a copy of records within the time set forth in subdivision (c) entitles the current or former employee or the Labor Commissioner to recover a seven-hundred-fifty-dollar ($750) penalty from the employer."

236.   And Labor Code § 226(h) provides an employee "is entitled to an award of costs and reasonable attorney's fees" based on an employer's failure to provide the required records.

237.   Labor Code § 1198.5(a)-(b) provides:

> Every current and former employee, or his or her representative, has the right to inspect and receive a copy of the personnel records that the employer maintains [and] The employer shall make the contents of those personnel records available for inspection to

the current or former employee, or his or her representative, at reasonable intervals and at reasonable times, but not later than 30 calendar days from the date the employer receives a written request.

238. Labor Code § 1198.5(k)-(l) further provides "the current or former employee or the Labor Commissioner may recover a penalty of seven hundred fifty dollars ($750) from the employer . . . and may recover costs and reasonable attorney's fees in such an action."

239. On December 11, 2024, Gonzalez submitted a formal, written request to ManTech (by and through his counsel) to obtain a copy of his personnel file and payroll records.

240. Gonzalez (by and through his counsel) mailed this request to ManTech's principal place of business through the United States Postal Service via its certified mail return receipt requested service.

241. ManTech received Gonzalez's request on December 17, 2024, according to the Postal Service.

242. To date, ManTech has not responded to Gonzalez's request.

243. Therefore, Gonzalez and other California Class Members who have requested but not received payroll records and/or personnel files pursuant to the Labor Code are entitled to the aforementioned penalties under Labor Code § 226 and 1198.5, as well as costs and attorney's fees.

## COUNT VIII

### VIOLATION OF CALIFORNIA'S UCL

### PURSUANT TO CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*

244. Gonzalez brings his UCL claim as a class action on behalf of himself and the other California Class Members pursuant to Fed. R. Civ. P. 23.

245. California Business and Professions Code § 17200, *et seq.*, prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business acts or practices.

246. Business and Professions Code § 17204 allows a person injured by the

unfair business acts or practices to prosecute a civil action for violation of the UCL.

247.   Labor Code § 90.5(a) states it is the public policy of California to vigorously enforce minimum labor standards in order to ensure employees are not required to work under substandard and unlawful conditions, and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

248.   Beginning at an exact date unknown to Gonzalez, but at least during the 4 years prior to the filing of this Complaint, ManTech committed acts of unfair competition as defined by the UCL, be engaging in the unlawful, unfair, and fraudulent business acts and practices described in this Complaint, including, but not limited to:

    a.    Violations of Labor Code § 510 and IWC Wage Order 17-2001 pertaining to overtime and double time wages;

    b.    Violations of Labor Code § 226 regarding accurate, timely, itemized wage statements; and

    c.    Violations of Labor Code §§ 201-203 pertaining to waiting time penalties.

249.   ManTech's violations of these California laws and regulations, as well as the fundamental California public policies protecting wages, serve as unlawful predicate acts and practices for purposes of Business and Professions Code §§ 17200, *et seq.*

250.   ManTech's acts and practices described above constitute unfair, unlawful, and fraudulent business practices and unfair competition within the meaning of Business and Professions Code §§ 17200, *et seq.*

251.   Among other things, ManTech's acts and practices have deprived Gonzalez and the other California Class Members of rightfully earned wages, while enabling ManTech to gain an unfair competitive advantage over law-abiding

employers and competitors.

252.    Business and Professions Code § 17203 provides that a court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition.

253.    Injunctive relief is necessary and appropriate to prevent ManTech from repeating the unlawful, unfair, and fraudulent business acts and practices alleged in this Complaint.

254.    ManTech's unlawful conduct harmed Gonzalez and the other California Class Members by depriving them of money and property, in the form of unpaid wages which are due and payable to them.

255.    Business and Professions Code § 17203 authorizes the Court to restore any money or property which may have been acquired by means of such unfair competition to Gonzalez and the other California Class Members.

256.    Gonzalez and the other California Class Members are entitled to restitution pursuant to Business and Professions Code § 17203 for all wages and payments unlawfully withheld from them during the 4-year period prior to the filing of this Complaint.

257.    Gonzalez's success in this action will enforce important rights affecting the public interest.

258.    Therefore, Gonzalez sues on behalf of herself as well as the other similarly situated California Class Members.

259.    Accordingly, Gonzalez and the other California Class Members seek and are entitled to unpaid wages, declaratory and injunctive relief, and all other equitable remedies owing to them.

260.    Gonzalez takes upon herself enforcement of these laws and lawful claims.

261.    There is a financial burden involved in pursuing this action, and the action is seeking to vindicate a public right and it would be against the interests of

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND
*Gonzalez v. ManTech Advanced Systems International, Inc.*

1    justice to penalize Gonzalez by forcing her to pay attorneys' fees from the recovery

2    in this action.

3        262.    Thus, attorneys' fees are appropriately awarded to Gonzalez pursuant

4    to Code of Civil Procedure § 1021.5 and otherwise.

**Relief Sought**

6        WHEREFORE, Gonzalez, individually and on behalf of the other Hourly

7    Employees, and Hourly Employees seek the following relief:

8        a.    An Order designating this lawsuit as a collective action and authorizing

9            notice to the FLSA Collective Members allowing them to join this

10            action by filing a written notice of consent;

11        b.    An Order certifying this lawsuit as a class action pursuant to Fed. R.

12            Civ. P. 23;

13        c.    An Order appointing Gonzalez and his counsel to represent

14            the interests of the California Class Members;

15        d.    Damages and restitution according to proof at trial for all

16            unpaid wages and other injuries, as provided by the FLSA and

17            California Labor Code;

18        e.    A Declaratory Judgment that ManTech violated the FLSA,

19            UCL, Labor Code, California law, and public policy as alleged

20            herein;

21        f.    An Order finding ManTech liable to Gonzalez and the other

22            FLSA Collective Members for all unpaid overtime wages owed

23            under the FLSA, plus liquidated damages in an amount equal to

24            their unpaid wages;

25        g.    An Order finding ManTech liable to Gonzalez and the other

26            California Class Members for their unpaid wages, overtime

27            wages, double-time wages, liquidated damages, statutory

28            damages, and any other penalties owed under the California

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND
*Gonzalez v. ManTech Advanced Systems International, Inc.*

Labor Code, applicable IWC Wage Order(s), and UCL;

h.    An equitable accounting to identify, locate, and restore all current and former employees the wages and compensatory damages they are due, with interest thereon at the highest rates allowable by law;

i.    Judgment awarding Gonzalez and the other Hourly Employees all unpaid wages, overtime wages, double time wages, liquidated damages, statutory damages, and any other penalties available under the FLSA, Labor Code and/or applicable IWC Wage Order(s);

j.    An Order awarding attorney's fees, costs, and expenses as provided by the FLSA, Labor Code, Code of Civil Procedure § 1021.5, the laws of the State of California, and/or other applicable law;

k.    Pre- and post-judgment interest at the highest applicable rates; and

l.    Such other and further relief as may be necessary and appropriate.

Date: February 6, 2025                    Respectfully submitted,

_____

William M. Hogg
**JOSEPHSON DUNLAP LLP**

*Counsel for Gonzalez & the Hourly Employees*

1

## DEMAND FOR JURY TRIAL

2          Gonzalez hereby demands a jury trial on all claims and issues, as he and the

3   other Hourly Employees are entitled to a jury.

4

5

6   Date: February 6, 2025                    Respectfully submitted,

7

8                                            _____

9                                            William M. Hogg

10                                           JOSEPHSON DUNLAP LLP

11                                           *Counsel for Gonzalez & the Hourly Employees*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND
*Gonzalez v. ManTech Advanced Systems International, Inc.*